

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 13, 2016

**BY ELECTRONIC MAIL & ECF**

The Honorable Analisa Torres
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York  10007

>      Re:   *United States v. Darnell Dogan*
>            S1 15 Cr. 161 (AT)

Dear Judge Torres:

The Government respectfully submits this memorandum in advance of the sentencing of defendant Darnell Dogan, scheduled for Tuesday, September 20, 2016, at 11:30 a.m., and in response to the defendant's sentencing memorandum of August 11, 2016.  For the reasons set forth below, the Government submits that the Court should impose a Guidelines sentence in this case.

**I.      The Guidelines**

As calculated by the United States Probation Office (the "Probation Office"), the advisory Guidelines range in this case is 63 to 78 months' imprisonment.  (PSR ¶ 65).  The parties stipulated to that same Guidelines range in a plea agreement between the defendant and the Government, dated March 14, 2016.  (PSR ¶ 9).

For the reasons set forth below, the Government seeks a sentence within the stipulated Guidelines range of 63 to 78 months' imprisonment.  In that regard, it bears noting that the defendant has already received a significant benefit, insofar as he was not required to plead to Count Three of the S1 Indictment, a Section 924(c) discharge offense carrying a 120-month mandatory minimum sentence.

In its Presentence Report, the Probation Office recommends a sentence at the bottom end of that range of 63 months' imprisonment.  (PSR at 15).  In his sentencing memorandum, the defendant does not object to the accuracy of the Guidelines range calculated by the Probation

Office, nor does he contest any of the material facts regarding his criminal conduct.  However, he requests that this Court impose a sentence of 24 months' imprisonment, substantially below the applicable and stipulated Guidelines range.  (Def.'s Mem. at 1).

## II.     The Defendant's Criminal History

As the Presentence Report notes, the defendant has a pending firearm offense relating to a March 30, 2013 arrest in Queens, New York.  (PSR ¶ 44).  In addition, the defendant has a second pending case in Queens County Criminal Court for jumping bail on his gun charge.  (PSR ¶ 46).

As recounted in the Presentence Report, according to a Queens County criminal complaint sworn to by the New York City Police Department ("NYPD") arresting officer:  (a) on March 30, 2013, the officer observed the defendant operating a BMW sedan, which failed to stop at a stop sign; (b) there was another individual in the front passenger seat of the BMW; (c) when the officer activated his lights and sirens, the defendant drove off at a high rate of speed, and drove through three additional stop signs without stopping; (d) the defendant eventually pulled over for the officer, only to drive off again when the officer exited his police car; (e) when the officer finally effected a successful stop of the BMW, the defendant was unable to produce a valid license; and (f) the officer recovered an unloaded 9mm Ruger semi-automatic handgun from under the front hood the BMW, and $1,093 in cash from the trunk.  (PSR ¶ 44).  An analysis of the gun by the New York City Police Department Firearms Analysis Section revealed that the firearm was operable.

Dogan subsequently failed to appear for a May 16, 2014 court date on the Queens gun case, and a bench warrant was issued.  He did not reappear in court on the charges until March 15, 2015, approximately 10 months later.  During the period he was warranted on the gun case, on August 12, 2014, he committed the instant attempted robbery offense, which also involved a firearm.  Following his March 15, 2015 court appearance, Dogan learned that he was to be charged with a new bail jumping offense in connection with failing to appear on his gun case.  Dogan then failed to appear again on March 17, 2015 for arraignment on the new bail jumping charge, and on April 23, 2015 in connection with the gun case, and two more bench warrants were issued.  As of the date of his federal arrest, July 13, 2015, both warrants were still active.  Since being taken into federal custody, the defendant has not been produced to Queens County Criminal Court to appear on the warrants; the gun and bail jumping cases remain pending against the defendant.

While the defendant has not been convicted of either of these offenses, the underlying facts undermine his argument that "he has never before engaged in conduct similar to that which was involved in this case."  (Def.'s Mem. at 1).  Regardless of whether or not he is ultimately convicted on the gun and bail jumping charges, the fact remains that Dogan committed the instant attempted home invasion robbery offense while in bench warrant status on other very serious crimes.

### III.    The Appropriate Sentence

The Government submits that a sentence within the applicable range of 63 to 78 months' imprisonment is appropriate, not reflexively because it is a Guidelines sentence, but rather because such a sentence adequately balances all of the factors that the Court is required to consider under Section 3553(a).

Several factors suggest that such a result is appropriate in this case.

First, given the nature of the defendant's criminal conduct, a Guidelines sentence will "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  Dogan was part of a crew of individuals who regularly committed armed robberies of drug dealers and others in the Bronx, New York and elsewhere.  In August 2014, Dogan and other crew members planned and attempted to execute a gunpoint, push-in home invasion robbery in a residential area of the Bronx.  Critically, it was the defendant who first learned about the intended victim of the robbery, a financially successful businessman who gambled from time to time, and identified him as an ideal target for an armed robbery.  (PSR ¶ 17).  It was the defendant who recruited other robbery crew members to assist in the offense.  (PSR ¶ 17).  It was the defendant who kept in close touch with his inside source of information, a woman known to the victim, to get updates on the victim's whereabouts and the victim's status regarding whether or not he was in possession of a large sum of money (PSR ¶ 18); Dogan and his co-defendants even conducted surveillance of the victim in advance of the incident.  And it was the defendant who communicated with the insider on the night of the attempted robbery, utilizing his relationship with her to time the robbery for maximum effect.  (PSR ¶ 18).  In short, absent the defendant's involvement in planning and executing the offense, the crime never would have taken place.

On the day of the planned robbery, the defendant and his co-conspirators laid in wait across the street from the victim's apartment with a gun at the ready.[1]  (PSR ¶¶ 18-19).  When they received the go-ahead from the defendant's inside connection, they retrieved the gun from the bushes and streamed across the street toward the victim's apartment building.  (PSR ¶ 19).

Several surveillance video clips, previously provided to the Court in connection with the sentencing of co-defendant Peter Carr,[2] show Dogan and his associates waiting across the street from the victim's apartment building, and subsequently heading together into the building immediately before the armed robbery attempt.  Specifically, the video file entitled "1420 Front N-B.wmv" shows defendants Blackwood, Carr, Dogan, Doyle, and Thomas standing in front of the apartment building directly across the street from the victim's apartment building, immediately before the attempted robbery.  Jason Thomas may be seen at the top of the video frame; as the Presentence Report notes, after receiving the anticipated communication from the Woman, Thomas peeled off, telling the other men that he was going to get another gun from his car, which was parked nearby (PSR ¶ 16).  The instant defendant, Darnell Dogan, is the seen

---

[1]   A photograph of the gun used in the robbery and recovered by responding police officers is attached hereto as Exhibit A.

[2]   The Government will provide a disc containing the surveillance video clips – marked as Exhibit B – to the defendant under separate cover.

crossing the street to the victim's apartment building together with Damien Doyle (Dogan is in a red and white plaid shirt, Doyle is in dark colored clothing and a baseball cap), immediately preceded by Peter Carr and Michael Blackwood. The video file entitled "1420 Front S-B.wmv" shows Blackwood retrieving the gun, which the men had hidden in the bushes across the street from the victim's apartment building, just before crossing the street with Carr, Dogan, and Doyle. (*See* PSR ¶ 16).

The video file entitled "1419 Noble Front" shows Carr, Blackwood (holding a bag containing the gun), Dogan, and Doyle – in that order – entering the front door of the victim's apartment building. Approximately 40 seconds later, Dogan can be seen exiting the front door of the building. He subsequently checks inside, and having observed a struggle on the stairway, then runs away, heading northbound on Noble Avenue. As he fled, Dogan bumped into Thomas, who was returning from his car, and the two left the area together. (*See* PSR ¶ 16). The video does not show Carr, Blackwood, and Doyle leaving the victim's building through the front door. Based on the Government's investigation, it appears that they escaped out of the rear window of the victim's apartment, as further corroborated by a photo taken by NYPD officers of a broken window screen in the victim's apartment, attached hereto as Exhibit C.

While these videos do not show the attempted gunpoint invasion of the victim's apartment within the building, or the struggle that occurred in the hallway and stairwell of the building during which perpetrators' gun discharged,[3] the videos nonetheless demonstrate the brazen and fully premeditated nature of the defendants' conduct in this case.

The Government's evidence further demonstrates that the encounter inside of the building with the victim was indeed a violent one. As Dogan stood watch at the front door, Blackwood, Carr and Dogan ascended the common stairwell in the building, Blackwood pointed a gun at the victim in his doorway, and the three men attempted to force their way into the victim's apartment. (PSR ¶ 20). A struggle with the victim ensued, several men (including the victim) tumbled down the stairs, and the gun discharged. (PSR ¶ 20). After the victim wrestled the firearm away from Blackwood, the victim fired it to protect himself from an advancing perpetrator. (PSR ¶ 20). As noted above, certain of Dogan's co-defendants escaped through the rear window of the victim's apartment, while Dogan fled from the building, running away northbound on Noble Avenue. (PSR ¶ 20). The victim suffered lacerations and bruising to his head and hands as a result of the incident. (PSR ¶ 23).

Needless to say, this premeditated and violent attempted home-invasion robbery represents an exceptionally serious offense. The Government does not dispute that Dogan was not directly involved in the assault of the victim inside of his building and that he did not himself brandish a gun that night. (*See* Def.'s Mem. at 1-2, 4). That said, the defendant orchestrated and participated in the attempted robbery with full knowledge that violent force would be threatened and potentially used, and that a firearm would be deployed. In light of that knowledge, along with his instrumental role in planning and coordinating the offense, he is at least as culpable as his co-defendants, if not more so. The life of the victim was seriously endangered by the defendant's conduct, as were those of other individuals who lived in the apartment building, who

---

[3] This is because there were no surveillance cameras positioned inside of the victim's apartment building.

could have easily been wounded or killed as the result of a stray bullet.  The gravity of the offense committed by the defendant demands a significant sentence of imprisonment, to provide just punishment and to reflect the severity of his conduct.  *See* 18 U.S.C. § 3553(a)(2)(A).

The defendant also poses a threat to the public.  *See* 18 U.S.C. § 3553(a)(2)(C) (sentencing court shall consider the need "to protect the public from further crimes of the defendant").  After being stopped and arrested for possession of a firearm, the defendant jumped bail, and continued to engage in violent criminal activity.  Indeed, his control of a vehicle containing both a gun and a large sum of cash (nearly $1,100) at the time of his March 2013 arrest is consistent with ongoing involvement in a robbery crew.  Regardless, the defendant's premeditated conduct in planning and executing a violent home invasion robbery in the instant case demonstrates that the public requires protection from the defendant.  A Guidelines sentence of imprisonment would serve that purpose.

As for deterrence – in particular, specific deterrence – it is clear that prior court supervision has not affected the defendant's behavior.  *See* 18 U.S.C. § 3553(a)(2)(B) (sentencing court shall consider the need "to afford adequate deterrence to criminal conduct").  After being arrested for the gun possession offense in March 2013, and then absconding from those charges, the defendant engaged in the August 2014 gunpoint attempted robbery on Noble Avenue at issue here.  Whether or not he is ultimately convicted of the Queens County gun and bail jumping offenses, his total disregard for the criminal justice system is apparent based on the timeline of his criminal conduct.  The principle of deterrence demands a significant sentence of imprisonment to impress upon the defendant and others in his position that such contempt for the rule of law of the law will not be tolerated, particularly given the serious nature of the offense committed here.

Thus, in light of "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), a sentence within the applicable Guidelines range is necessary to satisfy at least three of the statutory sentencing objectives: (1) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, *id.* § 3553(a)(2)(A); (2) the need to protect the public from further crimes of the defendant, *id.* § 3553(a)(2)(C); and (3) the need to afford adequate deterrence to criminal conduct, *id.* § 3553(a)(2)(B).

**IV.    Conclusion**

       For the reasons set forth herein, the Government submits that a sentence within the applicable Guidelines range of 63 and 78 months' imprisonment is appropriate in this case.

                    Respectfully submitted,

                    PREET BHARARA
                    United States Attorney

By: _____
                    Christopher J. DiMase
                    Assistant United States Attorney
                    Southern District of New York
                    (212) 637-2433

cc:    David Stern, Esq. (by electronic mail & ECF)

# **EXHIBIT A**



# EXHIBIT B

# (SURVEILLANCE VIDEO CLIPS PREVIOUSLY PROVIDED TO THE COURT)

# **EXHIBIT C**

